AO 472 (Rev. 11/16) Order of Detention Pending Trial

United States District Court
Southern District of Texas

**ENTERED**
February 22, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
for the
Houston Division of the
Southern District of Texas

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No. 4:22-mj-254 |
| Lilia Aracely Alejandro-Galvan ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
**(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☒ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☒ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☒ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☐ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☐ History of alcohol or substance abuse
☒ Lack of stable employment
☐ Lack of stable residence

☒ Lack of financially responsible sureties
☐ Lack of significant community or family ties to this district
☒ Significant family or other ties outside the United States
☒ Lack of legal status in the United States
☒ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☐ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents
☒ Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

On February 17, 2022, the Court held a hearing to determine whether Defendant Lilia Aracely Alejandro-Galvan ("Defendant" or "Alejandro-Galvan") and co-Defendant Israel Leon-Perez ("Leon-Perez") (collectively "Defendants") should be held in custody pending trial in accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3142(f).  The Defendants are charged in a Criminal Complaint, Case No. 4:22-mj-254, pending in the Southern District of Texas, Houston Division, with possession with intent to distribute over 500 grams of a mixture or substance containing methamphetamine ("meth"), in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A)(viii). Assistant United States Attorney Jimmy Leo appeared on behalf of the United States (the "Government"); CJA Attorney Leira Gracia appeared on behalf of Defendant Alejandro-Galvan and Assistant Federal Public Defender Amr Ahmed appeared on behalf of co-Defendant Leon-Perez.

Defendant Alejandro-Galvan's Background

Pretrial Services ("PTS") prepared a report after an interview of Defendant. She is 43 years old, born in Mexico, and illegally emigrated to the United States in 2007. She has lived in a rented house in Houston for the past two years. She and Leon-Perez are in a common-law relationship. She has five children from other relationships, no ages or citizenship provided. Her parents live in Mexico, as does her sister. She has a brother who is a U.S. citizen but did not indicate where he lives. Defendant has an expired Mexican passport and reports she has not returned to Mexico since 2007. Defendant reported that she works full-time selling Mexican products on Facebook for the last seven years and sold tamales before that. Her information was not verified because the number she provided for her son had been disconnected. Defendant has no criminal record.

PTS recommended detention.

Evidence Regarding the Pending Complaint

At the hearing, the Government offered testimony of a Special Agent ("Agent") with the Drug Enforcement Administration ("DEA"), concerning the investigation and the Defendants' subsequent arrest. The Court finds Agent's testimony to be credible. He testified to the following:

1.  Agent was familiar with Defendant and the charges leading to her arrest. Agent testified about an investigation that started with a DEA confidential source ("CS") who provided information that an unknown male ("UM") in Mexico had meth for sale in Houston. CS put the Mexican source in touch with an undercover officer ("UC").

2.  UM and UC spoke on February 5, 2022, negotiating a drug transaction. UC ordered eight kilos of meth in Houston. UM said he could deliver it at a price of $3,0000 per kilo. The sale was arranged for February 7, 2022. UC spoke to UM on February 7. UM told UC that a local courier would call UC.

3.  On the afternoon of February 7, 2022, a woman called UC to set up a meet for the drug transaction. The woman was

Defendant Alejandro-Galvan. UC and Defendant agreed to meet at a parking lot on Little York in Houston. Defendant said she would be in a black Ford F-150 pickup truck. DEA set up surveillance before the scheduled meeting time. At 5:40 p.m., agents observed a black F-150 backup into a parking spot in the agreed upon lot. Surveillance observed Defendant exit the truck and walk into a store while talking on the phone with UC. She told UC that the drugs were in the truck and the person who would conduct the transaction was in the truck. The police then converged on the truck. Leon-Perez was the sole occupant and was sitting in the driver's seat. He had a .45-caliber pistol in a fanny pack slung over his shoulder. It was loaded with eight rounds of ammunition inside the gun, but the chamber was empty. In the back seat were eight one-gallon bags with what looked like meth inside of a cardboard box. The substance field tested positive for meth. There was a total of just over eight kilos of meth, a Schedule II controlled substance. Both Defendants were arrested.

4. In a post-Miranda statement, Defendant admitted involvement in the delivery of the meth. She said that her role was to coordinate deliveries between Mexican suppliers and buyers in the U.S. She further stated that she used Leon-Perez as a courier. She did not make any statement about payment to her for her role in the transaction. Defendant said that she received pressure from the cartel to get involve in drug transactions and make deliveries. She owed a debt for a vehicle law enforcement seized and removed from her house in the past. Individuals in Mexico were holding her responsible for the vehicle and were requiring her to work off the debt. Defendant had no weapons on her person. She was compliant during the arrest. She had no drugs other than a small amount of powder on dollar bills in her purse, considered personal use.

5. Leon-Perez said that he was paid $500 in the past for making deliveries. He did not provide any specifics about past deliveries. He joked that he should have been paid more than $500 for eight gallons of meth. Leon-Perez did not say who paid him. He indicated that he has an ongoing partnership with Defendant to conduct these transactions. Leon-Perez said he found the gun while doing construction and kept it. No drugs were found on him. There was not a large amount of cash on him or in the truck.

6. Agent acknowledged that Defendant's father is a U.S. citizen. He was unaware of her mother's status. He did understand that some of Defendant's relatives have legal status in the U.S. Agent verified that Defendant has five children here. The two youngest are U.S. citizens. One of her children who is not a citizen is married to a U.S. citizen. Agent confirmed that Defendant has been living in the U.S. since 2007. He further verified that Defendant entered the country legally on a visa in 2007. The visa has since expired, and she is now here illegally. Agent was not aware whether she applied to adjust her status.

7. Agent confirmed that all communications leading up to the transaction were between UC and UM and then UC and Defendant. Leon-Perez did not have any calls or texts with UC. UC was supposed to pay $24,000 for the meth. Defendant instructed UC that the person inside the truck was the person who would conduct the transaction, meaning Leon-Perez.

8. Defendant proffered that she entered the U.S. legally on a visa and overstayed. INS approved an adjustment to her status. Her father is a U.S. citizen. Her mother is a legal resident. Her father has a home in Houston. Her parents are divorce. Her mother lives in Houston. Defendant has five children in the U.S. None of this information was provided to PTS in time to be included in the report or verified before the hearing.

Order

Based on the allegations in the complaint, the evidence presented at hearing, and the information in the Pretrial Services report, the Court concludes as follows:
(1) The evidence is overwhelming that Defendant committed the offenses with which she is charged, namely: possession with intent to distribute over 500 grams of a mixture or substance containing meth in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A)(viii).

(2) Pursuant to 18 U.S.C. § 3142(e), the drug charge, which carries a minimum 10 year sentence, creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community or Defendant's appearance as required. See United States v. Trosper, 809 F.2d 1107, 1110 (5th Cir. 1987) (presumption

against pretrial release arises based on indictment's allegations).

(3)   In addition to the presumption, the Government established by clear and convincing evidence that Defendant is a danger to the community such that she should be detained pending trial. See 18 U.S.C. § 3142(f) ("[A] finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."). Defendant is charged with possession with intent to distribute. The evidence establishes that a Mexican source of supply arranged the sale of eight kilos of meth in Houston. Defendant was the local courier for the Mexican source, and she admitted working for the cartel as a liaison between the seller and buyer of drugs. She and co-defendant Leon-Perez delivered the eight kilos of meth to UC that the Mexican source arranged and she admitted to engaging in similar transactions in the past for the cartel. She was aware of the drugs she was delivering. Defendant's involvement in drug trafficking large quantities of narcotics is inherently dangerous to the community. She is indebted to the cartel, and she admitted that they required her to engage in these transactions to pay off her debt. There was no evidence to suggest that, if she was released on bond, she would be able to avoid engaging in future transactions for the cartel. She also roped her romantic partner into these transactions, and he brought a loaded weapon at the transaction, further demonstrating that she is a danger to the community. Defendant failed to produce any evidence to show that she does not pose a danger to the community.

(4)   In addition to the presumption, the Government established by a preponderance of the evidence that the Defendant is a flight risk because the penalty range for the charge at issue is for jail time of 10 years to life. Because the evidence of guilt is strong, this enhances the risk of flight. Defendant is a Mexican citizen. She sells Mexican products online. She owns no property and does not have any financial ties to the community. She is indebted to the cartel and has contact with a source of supply in Mexico. Her father, an American citizen, owns a home in Houston. Her mother is a legal resident and purportedly lives in Houston. But Defendant told PTS that both of her parents live in Mexico. She also has a sister living in Mexico. No evidence was presented that either parent could act as a surety or third-party custodian.

(5)   Defendant has not rebutted the presumption that she is a danger to the community or a flight risk. See United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986) (to rebut this presumption, a defendant can show that something about her individual circumstances suggests that "what is true in general is not true in the particular case," including evidence of her marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3)).

(6)   Thus, the Court finds that there are no conditions or combination of conditions that will reasonably assure safety to the community such that it cannot safely release her on bond.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:          02/22/2022                                    *Dena Palermo*
                                                         United States Magistrate Judge